Follett, Ch. J.
 

 So far as the case before us shows, the earliest reference to the land in dispute is contained in the judgment roll in partition.
 

 In March, 1847, Ann Stilwell, her husband joining, filed a bill in the late court of chancery against John and Jacobus Emmons,
 
 *764
 
 alleging that they were seized in fee as tenants in common of the land now in dispute, and of other lands.
 

 Jacobus Emmons answered by his guardian
 
 ad litem
 
 and submitted his rights to the court.
 

 John Emmons also answered and admitted the allegations of the bill. The mother of John and Jacobus Emmons had remarried, and she and her husband were also parties defendant, who answered that the mother was entitled to dower in part of the premises. A reference was ordered to report upon the rights and interests of the parties to the action in the subject matter thereof. December 23, 1847, an interlocutory judgment was entered in the action in partition, appointing commissioners to make actual partition of the lands. March 1,1848, the commissioners made and filed their report partitioning the lands between the parties to the action. That which is in dispute in this action was set off to John Emmons, and is- thus described: “All that certain piece or parcel of meadow land situated, lying and being in the said town of Gravesend, and known and designated on the said map as and by the number XXIII (twenty-three) on the said map, bounded and described as follows, to wit: Beginning at a certain stake standing on Duck Hill placed at the division line between meadows of the heirs of Abraham Emmons and the said parcel number XXIII (twenty-three); running thence south five degrees east, twenty-four chains, along said meadow land of the heirs of Abraham Emmons to the Atlantic Ocean; running thence north seventy-nine degrees and thirty minutes east, one chain and seventeen links along the said Atlantic Ocean to parcel number XXIY (twenty-four), allowed and set apart by us to Jacobus Emmons, as hereinafter mentioned; running thence north five degrees and forty five minutes west, along the division line between parcel XXIII (twenty-three) and XXIY (twenty-four) twenty-four chains to Duck Hill and to a certain stake there standing and put and placed by us; running thence south seventy-nine degrees and thirty minutes west, one chain to the point or place of beginning, containing two acres, two roods and fourteen perches.” The commissioners filed in the clerk’s office a map of the lands partitioned, showing the part assigned to each, and known as No. 173. March 10, 1848, a final judgment was entered confirming the report of the commissioners, and in addition the parties conveyed to each other the lands set apart to each; Ann Stillwell and her husband and Jacobus Emmons by his guardian assumed to convey parcel No. 23 to John Emmons, by a deed dated April 6, 1848, and duly recorded in Kings county, April 8, 1848.
 

 John Emmons assumed to convey lot No. 23 to Charles H. Greenleaf by a deed dated September 30,1848, and duly recorded February 8, 1850. Charles H. Greenleaf assumed to convey an undivided half of this lot to James S. Butler by a deed dated July 27, 1877, and recorded September 17, 1877. Afterwards Charles H. Greenleaf died, having devised his real estate to Elizabeth Greenleaf, one of the present plaintiffs. Upon the trial before the court without a jury, the plaintiffs recovered the possession of the premises, as tenants in common in fee simple, with $100 damages
 
 *765
 
 for the wrongful withholding, which was affirmed at general term.
 

 The important question involved in this appeal is whether the plaintiffs gave sufficient evidence of title to sustain a recovery in ■ejectment. Their evidence is solely documentary, and consists of the judgment-roll in partition and the subsequent deeds already referred to. The defendants insist that the judgment was not ■competent evidence. It is unnecessary to consider the authorities discussing the conclusiveness of judgments, for they are so ■only as between the parties and their privies, unless they are the result of proceedings
 
 in rem,
 
 and moreover the plaintiffs do not assert that the judgment is an estoppel in their favor and against the defendants, but their contention is that it is evidence of title .and possession in the parties to it, liable like other evidence to be .Tebutted, but until overthrown sufficient to sustain a recovery in ■ejectment against defendants producing no evidence of title. A judgment
 
 in personam,
 
 like a deed or other muniment of title, in case it is a link in the chain of the title of one of the litigants, is .admissible in evidence as against the other, though a stranger to it.
 
 Barr
 
 v.
 
 Gratz,
 
 4 Wheat., 213;
 
 Webb v.Den,
 
 17 How., U. S., 576;
 
 Lessee of Buckingham
 
 v.
 
 Hanna, 2
 
 Ohio St., 551;
 
 Davies
 
 v.
 
 Lowndes
 
 1 Bing. N. C., 597-606; Freem. Judgt., § 416; 2 Black. Judgt., § 607; 1 Whar. Ev., §§ 200, 733, 820,
 
 et seq.;
 
 1 Green. Ev., § 539;
 
 2
 
 Taylor Ev., 8th ed., § 1668.
 

 The authenticity of the judgment was established by the record, and it was clearly admissible as an evidence of title, unless the •dclendants’ position can be sustained that neither it nor the subsequent deed from Emmons to Greenleaf were admissible because it was not shown that the parties to the judgment or to the deed had possession of the lands to which these documents relate.
 

 It is usually impossible to establish a very ancient possession of property by the testimony of persons having knowledge of the fact, and when a deed forming part of a chain of title is so ancien' that there can be, in the nature of things, no living persons who can testify to acts of ownership by the grantor or grantee, it may be received in evidence without such proof.
 
 Jackson
 
 v.
 
 Laroway,
 
 3 Johns. Cas., 283;
 
 Jackson
 
 v.
 
 Luquere,
 
 5 Cow., 221;
 
 Hewlett
 
 v.
 
 Cock,
 
 7 Wend., 371;
 
 Ensign
 
 v.
 
 McKinney, 30
 
 Hun, 249;
 
 Rogers
 
 v.
 
 Allen,
 
 1 Camp., 309;
 
 Doe
 
 v.
 
 Pulman,
 
 3 Q. B., 622;
 
 Malcomson
 
 v.
 
 O'Dea,
 
 10 H. L. Cas., 593;
 
 Bristow
 
 v.
 
 Cormican,
 
 L. R., 3 App. Cas., 641-668;
 
 Gardner
 
 v.
 
 Granniss,
 
 57 Geo., 539;
 
 Whitman
 
 v.
 
 Heneberry,
 
 73 Ill., 109; 1 Green Ev., §§ 21, 144; 1 Whart. Ev., §§ 199, 733; 2 Phill. Ev. (Edw. Ed.), 477; Best’s Ev., §499; 1 Taylor’s Ev. (8th Ed.) §§ 87, 665.
 

 While under this rule the judgment in partition, and the subsequent deed to John Emmons, were admissible in evidence, without proof of contemporaneous possession of the land by the parties to the judgment and deed, yet they are not sufficient evidence of title of one who claims under them through mesne conveyances to recover in ejectment, without showing some subsequent or inodora possession by the. parties who have received later deeds which go to make up the plaintiff’s chain of title.
 

 
 *766
 
 In the case at bar there is no evidence that the land in dispute was part of a larger tract possessed by some of the grantees in the-plaintiff’s chain of title. There is no evidence that John Emmons, was ever in possession, or exercised an act of ownership over the land, except when he assumed to convey it to Charles H. Green* leaf. Mor is there any evidence that Greenleaf took possession, under his deed, or exercised any act of ownership, except when he assumed to convey an undivided half to Butler.
 

 These lands on the beach' are incapable of being enclosed with fences and occupied like ordinary agricultural lands, but there is no evidence that they have been occupied for any purpose. It does not appear that grass or sand has been taken from them, or that they have been used as a means to approach the ocean for fishing or for any purpose.
 

 We think that the evidence failed to establish title in the plaintiffs, and that the judgment must be reversed and a new trial granted, with costs to abide the event.
 

 All concur, except Brown, J., not sitting.