[Civ. No. 9982. Third Dist. Oct. 9, 1961.]

LILY HOHFELD MOONEY, Appellant, v. ROBERT
E. SHIELDS, et al., Respondents.

Newell Rawles, Bruce Bruchler, Sullivan, Roche, Johnson & Farraher and James Farraher for Appellant.

Robert E. Shields, in pro. per., and Thomas F. Sargent for Respondents.

PEEK, J.—Plaintiff Mooney has appealed from a judgment in which her claim to certain real property was denied and that of defendants Shields was confirmed as to a portion of the property in dispute.

In order to better understand the rather involved factual situation presented, we have reproduced a map* used at the pretrial conference to illustrate the contentions of the parties. Plaintiff's ownership of Lots 1 through 7 of Block C of the Tahoe Vista Subdivision is conceded, as is defendants' ownership in the unsubdivided land immediately to the east of and contiguous to plaintiff's Lot 1, and hence, these properties are not in question. The only lands in controversy lie within the triangular area between the state highway on the north, appellant's Lot 1, and a portion of Lot 2 on the south. For clarity, we shall refer to the property owned by plaintiff in Block C as ''lots'' and the numbered portions included within the triangular area as ''parcels.'' It was stipulated that Mooney owned Parcel 1. The trial court determined that she also was the owner of Parcels 2, 7 and 9 and that defendants were the owners of Parcels 3, 4 and 5. No determination was

*See map on following page.

made as to Parcel 6. The county of Placer was named as a party defendant and appeared in the trial court, but is not a party to this appeal. Plaintiff attacks the judgment only as it relates to Parcels 3 and 5, the titles to which were quieted in defendants.

Both parties derived their title from the Tahoe Vista Investment Company. Plaintiff purchased Lots 1 through 7, which were a portion of Tahoe Vista Subdivision Number 1. (The boundary line of that subdivision is clearly indicated on the map by the heavy dark line.) Prior to 1931 and at the time the property was acquired by Mooney's predecessor in interest, the state highway ran as indicated on the map and designated as "Old Highway." It is clear from the map that no part of that highway was contiguous to any of Mrs. Mooney's property; that is, Lots 1 and 2 of Block C. The old highway was abandoned in 1936 and thereafter Mooney pur-

chased Parcel 1. She then moved her fences from the northerly boundary of her seven lots in Block C to the southerly boundary of the new highway.

In 1939, defendants purchased their property bordering Mooney's property on the east. This property had never been subdivided. Prior to the delivery of the deed to the defendants, their predecessor in title, one Mina A. Hifle, brought a quiet title action against the Tahoe Vista Investment Company and obtained a decree which contained the following description: "Also all that parcel of land lying north of Block C said Tahoe Vista Subdivision, south and east of the center line of the Old State Highway, as said highway existed on March 10, 1926 . . ." This decree then quieted Mrs. Hifle's title in those Parcels shown as 3, 4 and 5 on the map. The record contains no evidence that Mooney ever had any record title to Parcel 3. Neither she nor her predecessor in interest was named as a defendant in that action. Thereafter, defendants went into possession of the property and retained possession continuously from 1939 to the filing of the present action and thereafter. Mr. Shields testified that to enable him to get into his property, he removed fences erected by Mooney, taking out a number of fence posts which plaintiff had placed along the new highway. He built his house upon a portion of the contiguous property, which was included in his record title. A few years thereafter, he again removed posts which had been set up by Mooney, and in 1954, he pulled out the balance of the posts.

The property in dispute was assessed to defendants from 1949 through 1953, during which time they paid the taxes so assessed. Following the filing of the present action, the property was assessed to unknown owners. The unknown owner tax bills were sent to defendants and they continued to pay the taxes so assessed. These facts were corroborated by testimony of the assessor, who further testified that from 1940 to 1956 the property was assessed to defendants, or their predecessor in interest, and that prior to 1940, Parcels 3, 4, 5, 7 and 9 were assessed to no one.

Under the facts as summarized, we conclude that the trial court properly refused to quiet title in Mooney to Parcels 3, 4 and 5. The reproduced map indicates that the boundary of the subdivision followed the northerly boundary of Lot 1 and a portion of Lot 2; it is also clear that Parcel 3 was not a part of that subdivision. It further appears from the map that neither Lot 1 nor Lot 2 fronted on any dedicated

road or street in said subdivision. Furthermore, the record contains no evidence that the portion of Parcel 3 claimed by Mooney was ever a road or street, or dedicated as such. Absent any such evidence, she cannot claim Parcel 3 as an abutting owner. It necessarily follows that since she cannot claim any portion of Parcel 3, neither can she claim any portion of Parcel 5, which is a portion of the abandoned highway.

 Plaintiff's claim based on the doctrine of adverse possession also must fail. In order to establish title by adverse possession, the claimant must show exclusive possession by actual occupation under such circumstances as to give reasonable notice to the owner of the title; possession hostile to the owner's title; a claim of ownership of the property; continuous and uninterrupted possession for five years; and payment by him of all taxes levied and assessed on the property. (*Laubisch* v. *Roberdo,* 43 Cal.2d 702 [277 P.2d 9] ; Code Civ. Proc., § 325.) The evidence discloses that Mr. Shields on numerous occasions destroyed a portion of the fence which inclosed the property, and that the taxes to the property in dispute were assessed to and paid by defendants. This evidence was amply sufficient to defeat the claim of Mrs. Mooney based on adverse possession, and hence, the findings of the court are factually supported.

 The claim of defendants as to Parcel 3 is based on the decree obtained in the quiet title suit. Although at the time that action was commenced Mrs. Mooney had fenced the property and was in possession, she was not named as a defendant in the quiet title action. Accordingly, she was not bound by the decree entered in favor of Mrs. Hifle. (*Manuel* v. *Kiser,* 94 Cal.App.2d 540 [210 P.2d 918].) But since the record title was in the Tahoe Vista Investment Company, defendants acquired its interest and the legal title to the property. In the absence of a showing that the legal title was defeated, the court properly quieted title to Parcels 3, 4 and 5 in defendants.

 The rule is aptly stated in *Chapman* v. *Moore,* 151 Cal. 509, 514-515 [91 P. 324, 121 Am.St.Rep. 130] :

"While the general rule undoubtedly is that judgments bind only parties and privies, still there is an exception to the rule universally recognized which sustains their admissibility against third parties who are not parties or privies to the judgments for certain purposes. This exception is that the judgment rendered in an action involving title to property,

and in which it is determined that the title is in one of the parties to the action, is admissible in evidence in behalf of the party claiming under the judgment, and subsequently asserting a claim to the property affected by it as a link in his chain of title, although such judgment would not be conclusive on the party against whom it is offered because he was not a party or privy thereto. It is admissible in evidence, not for the purpose of defeating or affecting any claim or title of a party who was not a party or privy to such judgment, but solely as a muniment in an asserted title.

"In *Barr* v. *Gratz's Executors,* 4 Wheat. [U.S.] 213 [4 L.Ed. 553], the rule is stated: 'It is true that, in general, judgments or decrees are evidence only in suits between parties and privies. But the doctrine is wholly inapplicable to a case where the decree is not introduced as *per se* binding upon any rights of the other party, but as an introductory fact to a link in the chain of plaintiff's title and constituting a part of the muniments of his estate. . . . To reject the proof of the decree would be, in effect, to declare that no title derived under a decree in chancery, was of any validity except in a suit between parties and privies, so that in a suit by or against a stranger, it would be a mere nullity. It might with as much propriety be argued that the plaintiff was not at liberty to prove any other title deeds in this suit, because they were *res inter alios acta.*' To the same effect are the cases of *Kurtz* v. *St. Paul & D.R. Co.,* 65 Minn. 60 [67 N.W. 808] ; *Gage* v. *Goudy,* 141 Ill. 215 [30 N.E. 320] ; *Railroad Equip. Co.* v. *Blair,* 145 N.Y. 607 [39 N.E. 962] ; *Bussey* v. *Dodge,* 94 Ga. 584 [21 S.E. 151] ; *Skelly* v. *Jones,* 70 N.Y.Supp. 447 [61 App. Div. 173]. (See also 24 Am. & Eng. Ency. of Law, p. 757 ; Freeman on Judgments, § 416.)

"These authorities declare the exception to the general rule to be well established that a party claiming under a judgment is entitled to prove it as a muniment in his chain of title, and we content ourselves simply with a reference to them, as nothing to the contrary is cited by respondent."

No other points require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied November 7, 1961, and appellant's petition for a hearing by the Supreme Court was denied December 6, 1961.